IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JEVON EVERETT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 10-561 |
| v. | ) | District Judge Arthur J. Schwab |
| | ) | Magistrate Judge Cynthia Reed Eddy |
| NORT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I. **RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants Allegheny County Jail, Chronister, Coulter, Kengerski, Moore, Nort, Pindel, Rubel and Ramon Rustin (ECF No. 66) be granted and that the Motion for Summary Judgment filed by Defendant Allegheny County Health Services, Inc. (ECF No. 70) be granted.

II. **REPORT**

Jevon Everett, Plaintiff, currently an inmate at the State Correctional Institution at Graterford, Pennsylvania, filed this Complaint pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq*. In his Original Complaint filed on May 4, 2010 (ECF No. 3), Plaintiff alleged violations of his constitutional rights by Defendants Correctional Officer Nort, Correctional Officer Pendel, the Allegheny County Jail (ACJ), Sergeant Moore, Sergeant Rubel and Sergeant Kengerski, which allegedly occurred between April 13 and 29, 2008, while he was confined at the ACJ in Pittsburgh, Pennsylvania. Specifically, Plaintiff alleged that Defendants subjected him to excessive force when he refused to submit to biometric

1

fingerprinting and that he requested medical care following the incident. The case was referred to then Magistrate Judge Cathy Bissoon. On July 20, 2011, the Defendants filed a Motion to Dismiss (ECF No. 21) wherein they argued that the case should be dismissed because it was not filed within the applicable two-year limitations period. Subsequently, the case was reassigned to me on October 27, 2011 upon the elevation of Cathy Bissoon to the District Court.

On February 9, 2012, I issued a Report and Recommendation recommending that Defendants' pending Motion to Dismiss (ECF No. 33) be denied without prejudice to raising the statute of limitations argument again at summary judgment. On December 21, 2011, District Judge Arthur J. Schwab issued a Memorandum Order adopting the recommendations in my Report (ECF No. 34).

On January 4, 2012, I entered an Order for discovery. On June 14, 2012, Plaintiff filed an Amended Complaint wherein he added Defendants Allegheny County Health Services, Inc. (ACHS), Warden Ramon Rustin, Correctional Officer Chronister, and Sergeant Coulter. On November 30, 2012, the Allegheny County Defendants filed a Motion for Summary Judgment (ECF No. 66), a Brief in Support thereof (ECF No. 67), and a Concise Statement of Material Facts (CSMF) (ECF No. 74). On December 4, 2012, Allegheny County Health Services, Inc. (ACHS) filed a Motion for Summary Judgment (ECF No. 70), a Brief in Support thereof (ECF No. 71), and a CSMF (ECF No. 73). On February 20, 2013, Plaintiff filed an Affidavit (ECF No. 880), Briefs in Opposition (ECF Nos. 89 and 91), a Counter Statement of Facts (ECF No. 90), and a Concise Statement of Facts (ECF No. 92). The motions are ripe for disposition by this Court.

A. <u>Standard of Review</u>

Federal Rule of Civil Procedure 56(a)[1] provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. F. R. Civ. P. 56(e); Williams v. Borough of West Chester, 891 F.2d 458, 460–461 (3d Cir. 1989) (the non-movant must present affirmative evidence -- more than a scintilla but less than a preponderance -- which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party cannot rest "solely on assertions made in the pleadings, legal memoranda, or oral argument," Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. *See also* Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005). When considering a motion

---

[1] Pursuant to the 2010 amendments to the Federal Rules of Civil Procedure, the oft-cited summary judgment standard is now located in Rule 56(a) rather than 56(c), with a slight change of wording. Although the word "issue" has been replaced with "dispute," this change does not affect the substantive standard or the applicability of prior decisions construing the standard. *See* Fed. R. Civ. P. 56(a) advisory committee's note.

for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the non-moving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). Moreover, *pro se* pleadings are to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

## B. Material Facts

Plaintiff asserts the use of excessive force and deliberate indifference to medical treatment. The relevant material facts as to these claims are as follows. Plaintiff was an inmate in the ACJ on April 14, 2008 when he was ordered give "biometric fingerprints" in order to use the commissary. Plaintiff refused stating that he did not have any money and could not use the commissary and that it was against his religion to give his fingerprints except as required upon arrest. Plaintiff refused several orders to be fingerprinted and was placed in the restraint chair so that his hand could be manipulated for fingerprinting. When Plaintiff refused to release his fingers from a closed fist position, he was stunned with an electric taser. Defendants claim that he was stunned once before the fingerprinting was completed without further incident; Plaintiff alleges that he was stunned four times and sprayed with mace before he finally was fingerprinted. In the Amended Complaint, Plaintiff states that as a result of the use of Mace

and the Taser, he suffered "migraines, a quivering voice box, chest pains, heart pains, wheezing lungs, broken fingers, a hole in his buttocks and PTSD." (ECF No. 51, ¶ 24). Plaintiff admits that the medical nurses gave him 800 mg Motrin tablets following the incident and told him to be quiet and lie down.

As a result of Plaintiff's refusal to obey orders, he was placed in the Disciplinary Housing Unit (DHU). Nurses make daily rounds in the DHU to ensure that each inmate has no medical complaints. The medical records indicate that on April 14, 15 and 16, 2008, Plaintiff stated he had no medical complaints. Plaintiff claims that these records are incorrect and that he was told by medical that nothing would be done for him. He further claims that he administered first aid to himself for his alleged injuries but continues to suffer from migraines, PTSD and heart problems as a result of the incident.

In accordance with ACJ policy, this use of force incident was reported and turned over to Internal Affairs (IA) on April 15, 2008 (ECF No. 66-6). After reviewing the applicable reports, IA determined that the use of force was justified (ECF No. 66-6, p. 5).

### C. Statute of Limitations Defense

Both parties have asserted a statute of limitations defense claiming that the action must be dismissed because it was commenced after the applicable two year limitations period expired. As stated in this Court's earlier Report and Recommendation, it is well established that the statute of limitations of any section 1983 claim is the forum state's statute of limitations for personal injury suits. Mumma v. High Spec, Inc., 400 F. App'x 629, 631 (3d Cir. 2010) (citing Wilson v. Garcia, 471 U.S. 261, 266-67 (1985) (*overruled on other grounds*)). The applicable statute of limitations in Pennsylvania is two years. 42 Pa. Cons. Stat. § 5524.

5

The ACJ Defendants argue that Plaintiff's original Complaint was received by the Court on May 4, 2010. Because Plaintiff alleges that the acts or omissions underlying his claims took place between April 13 and 29, 2008, the ACJ Defendants argue that they are entitled to judgment based on Plaintiff's untimeliness. Plaintiff counters that, while the Court did not receive his complaint until May 4, 2010, he placed it in the prison mail system at SCI-Graterford no later than April 23, 2010 and the time-stamp for his account supports his claim. Pursuant to the so-called prison mailbox rule, a prisoner-plaintiff's complaint is deemed as having been filed on the date on which it is properly placed in the prison mailing system. *See, e.g.*, Pabon v. Mahanoy, 654 F.3d 385, 391 n. 8 (3d Cir. 2011).

Additionally, Plaintiff alleges that he engaged in the administrative grievance process at ACJ. Although not yet decided by the Court of Appeals for the Third Circuit, district courts within the Third Circuit have held that, because the PRLA requires a prisoner to exhaust all administrative remedies before filing a section 1983 claim in federal court, the statute of limitations may be tolled pending the exhaustion of the prison grievance system. *See* Dasilva v. Sheriff's Dep't, 413 F. App'x 498 n. 3 (3d Cir. 2011); Badley v. Bourne, 239 F. App'x 725 n. 1 (3d Cir. 2007); Shakuur v. Costello, 230 F. App'x 199 (3d Cir. 2007); Ballard v. Williams, 2010 WL 7809047, at *5 (M.D. Pa. Dec.9, 2010) (citing cases). The court finds this authority persuasive. Thus, the claims set forth in the original complaint are timely.

That does not end my determination, however, because Plaintiff filed an Amended Complaint on June 14, 2012 wherein he named three additional ACJ correctional guards and, for the first time, named Allegheny County Health Services, Inc. I now must determine whether the amendments relate back to the original complaint.

Federal Rule 15(c) controls the relation back of amendments and provides as follows.

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
>> (A) the law that provides the applicable statute of limitations allows relation back;
>>
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>>
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. Proc. 15(c).

Thus, Rule 15(c) enumerates three distinct prerequisites for an amendment to relate back to the original complaint: 1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint; 2) the party to be brought in by amendment must have received notice of the action within 120 days of its institution; and 3) the party to be brought in by amendment must have known, or should have known, that the action would have been brought against the party but for a mistake concerning its identity. Once these requirements are satisfied, Rule 15(c) instructs that the amendment relates back to the date of the original pleading.

Plaintiff's original complaint alleged an excessive use of force and the failure to provide adequate medical care afterwards. His amended complaint provides detail to those claims. Moreover, the Federal Rules respecting amendments to pleadings should be given a liberal

construction so that cases are decided on the merits rather than on bare pleadings. Fuhrer v. Fuhrer, 292 F.2d 140, 143 (7th Cir. 1961).

While there does not seem to be any indication that ACHS received notice of this lawsuit within 120 days, the discussion below makes clear that Plaintiff has failed to show any violation of his constitutional rights. Consequently, the Court need not grant the motions for summary judgment on the basis that the action was not filed within the applicable limitations period. Thus, the Court will decide the case on the merits.

## D. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to Civil Rights Act, 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). There is no question that the Defendants were acting under color of state law with respect to the actions alleged in the Second Amended Complaint. Therefore, the issue is whether Plaintiff has alleged a violation of any right under federal law.

As a pre-trial detainee, Plaintiff's claims invoke the protections of the Fourteenth Amendment.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process, we think that the proper inquiry is whether those conditions amount to punishment prior to an adjudication of guilt in accordance with law. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

8

Bell v. Wolfish, 441 U.S. 520, 535 (1979). In Bell, the Supreme Court announced the following test for determining whether the conditions of confinement for pre-trial detainees violated the Fourteenth Amendment.

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."
>
> . . .
>
> . . . A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

Bell, 441 U.S. at 538-539 (internal quotations and citations omitted).

The Court of Appeals for the Third Circuit reviewed this standard in Hubbard v. Taylor, 399 F.3d 150, 158-159 (3d Cir. 2005) (Hubbard I). In Hubbard I, the Court of Appeals acknowledged that Bell required the courts to engage in a two-step analysis.

> [W]e must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them. Our inquiry into whether given conditions constitute "punishment" must therefore consider the totality of circumstances within an institution.

Hubbard, 399 F.3d at 159 (internal quotations and citations omitted).

In the absence of substantial evidence indicating that officials have exaggerated their interest in maintaining security and order and operating the institution in a manageable fashion, "courts should ordinarily defer to [the officials'] expert judgment in such matters." Id. at 159 (quoting Bell, 441 U.S. at 540 n. 23).

The Court of Appeals for the Third Circuit has acknowledged that "Bell provides scant guidance on what constitutes punishment under the Fourteenth Amendment." Hubbard v. Taylor, 538 F.3d 229, 246 (2008) (internal quotation marks omitted) (Hubbard II). Notwithstanding, the Court has recognized that it is well established that, under the Constitution's guarantees of due process, a pre-trial detainee "is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment." Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000) (quotation marks and alterations omitted). *See also* Hubbard II, 538 F.3d at 236 (court examined Eighth Amendment cases to provide a baseline for unconstitutional conditions).

1. Failure to Provide Medical Care

Plaintiff alleges that ACHS failed to provide medical care. The Due Process clause requires the government to provide appropriate medical care to pre-trial detainees. City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983). Notwithstanding,

Plaintiff's medical treatment claim fails for two distinct reasons. First, Plaintiff has failed to show any basis upon which to impose liability against ACHS. Second, Plaintiff has failed to show that anyone was deliberately indifferent to his medical needs.

In this regard, in Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, *i.e.*, through application of the doctrine of *respondeat superior*. Instead, the Court concluded that a governmental unit may be liable under section 1983 only when its "policy" or "custom," whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, directly inflicted the injury. Monell, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible, *i.e.*, acts that the municipality has officially sanctioned or ordered. *Id.* In Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), the Court further clarified that "municipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483 (citation omitted).[2]

---

[2] Moreover, mere identification of a policy or custom is not enough to establish municipal liability; a plaintiff also must establish causation. In this regard, a plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation at issue. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 405 (1997) (a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights).

11

Just as a municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights. *See, e.g.*, Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992) (noting that every circuit court to consider the issue has extended the holding in Monell to private corporations as well) (citing cases). *Accord* Street v. Corrections Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996); Baker v. Simmons, 65 F. App'x 231 (10th Cir. 2003); Regelman v. Weber, Civil No. 10–675, 2011 WL 1085685, at *5 (W.D. Pa. Mar.21, 2011). Consequently, in order to assert a claim against ACHS, Plaintiff must show that a constitutional deprivation resulted from an official custom or policy or, alternatively, from the actions of an official with "final authority to establish municipal policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

Plaintiff's does not provide any evidence that any specific policy of ACHS led to any claimed injuries. Instead, ACHS is named as a Defendant simply as the entity-in-charge. Specifically, Plaintiff has not identified any policy or custom attributable to ACHS. Nor has he set forth any evidence of any similar incidents that have occurred in the past, save for the one in which he was involved, to prove some pattern of conduct that could establish a custom or policy. It is well settled that a single incident of unconstitutional behavior, without any direct involvement by a municipal policy maker, is not sufficient to impose municipal liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); City of Oklahoma v. Tuttle, 471 U.S. 808, 822 (1985); Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (plaintiff's mere assertion of the incident at issue, plus vague assertions about the police department's failure to investigate other wrongdoings, did not provide sufficient proof of a policy or custom to satisfy the dictates of section 1983).

12

Nor has Plaintiff set forth any evidence to establish liability against ACHS on the basis of its failure to properly train. In this regard, to establish liability on a failure to train theory, Plaintiff must set forth specific allegations that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001) (citing City of Canton, 489 U.S. at 390). In the case at bar, however, Plaintiff has not identified any specific training, supervision or disciplinary actions that were deficient. Nor has he established that training, supervision and/or discipline were not provided as needed. Moreover, he fails to make any specific factual allegations that ACHS is liable based on a policy or custom of tolerating inadequate medical care. Finally, he fails to allege with any specificity that any similar conduct occurred in the past such that ACHS should have been aware that an unreasonable risk of harm existed. *See* Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) ("the record before us is critically deficient of evidence on which a jury reasonably could have based its conclusion that [the municipality] was deliberately indifferent to the need to train . . . and that this failure to train was the actual cause of the plaintiffs' injuries.").

Moreover, even if Plaintiff could attribute liability to ACHS directly and not vicariously, he has failed to show any constitutional violation based on inadequate medical care. Plaintiff's medical records show that he was provided with appropriate medical care during his stay at the ACJ. More importantly, Plaintiff has not submitted any verifiable medical evidence to show that he suffered any significant injury as a result of the incident. A plaintiff's bare assertion that he suffered medical problems that defendants failed to treat does not state a facially plausible claim for relief. Shelley v. Patrick, 481 F. App'x 34, 36 (3d Cir. 2012). A plaintiff alleging constitutionally inadequate medical treatment must produce expert testimony that his or her

injuries were "serious" unless the seriousness of injury or illness would be apparent to a lay person, *e.g.*, a gunshot wound. Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987). In Boring, the Court of Appeals for the Third Circuit concluded that, with respect to an ulnar nerve injury, knee injury, and migraine headaches, a fact finder would not be able to determine that the condition was "serious" because the need for treatment did not appear to be "acute." *Id.* In so concluding, the Court noted that "courts will not 'second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment.'" *Id.* (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).

Here, Plaintiff has not provided any expert evidence to substantiate the existence of any serious medical need he suffered as a result of the incident. As with the medical complaints in Boring, a lay person would not be able to conclude that Plaintiff suffered from a serious medical need. Thus, he has not demonstrated that there was any "punishment" for purposes of stating a Due Process violation. Consequently, the Motion for Summary Judgment filed by ACHS should be granted. *Accord* Jones v. Burlington County Bd. of Chosen Freeholders, Civil No. 11-1373, 2011 WL 1892331, 2 (3d Cir. May 19, 2011) (holding that plaintiff's conclusory statement that the defendants did not "provide adequate medical attention" was insufficient to withstand a motion for summary judgment); Thrower v. Alvies, Civil No. 10-4311, 2011 WL 1632667, 2 (3d Cir. May 2, 2011) (affirming grant of summary judgment as plaintiff unable to show that the medical care provided by the defendants amounted to "punishment"); Bendy v. Ocean County Jail, Civil No. 06-2616, 2006 WL 1867194, 4 (D.N.J. June 30, 2006) (*sua sponte* dismissing prisoner's claim under the PLRA because Plaintiff alleged no facts indicating that he was being subjected to punishment as a pretrial detainee based on his medical care).

2.  Excessive Force

Plaintiff's second claim is that Defendants used excessive force in taking his fingerprints. To prove a due process violation, a detainee must show that the force used amounts to a wanton infliction of punishment, as opposed to an amount "rationally related" to exercising control. Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000) (quoting Bell, 441 U.S. at 538-39). If a plaintiff is unable to show that the use of force was wanton, the court will then consider whether the use of force was "really an incident of a legitimate non-punitive objective." Fuentes, 206 F.3d at 342.

Here, Defendants admit that they used the taser gun on Plaintiff when he refused to submit to fingerprinting. This use of force followed ACJ policy in using the taser as it was the least amount of force to bring Plaintiff into compliance without causing harm to the Plaintiff, officers, or other inmates. In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors relevant to this inquiry include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. *Id.*

In reviewing excessive force cases in the prison context, the Supreme Court has instructed as follows.

> When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to

maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (internal quotations omitted).

Moreover, as recognized by the Court of Appeals for the Third Circuit "[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." Reyes v. Chinnici, 54 F. App'x 44, 48-49 (3d. Cir. 2002) (holding force was *de minimis* where corrections officer punched inmate in the shoulder to avoid being spit on). *Accord* Thomas v. Ferguson, 361 F. Supp .2d 435, 439-41 (D.N.J. 2004) (finding that, "[e]ven if proven to be true and for no necessary purpose, Defendants' alleged conduct ... does not meet the Constitutional standard for a claim of a malicious and sadistic use of force 'repugnant to the conscience of mankind,' " where inmate alleged he was punched and shoved by corrections officers); Wilson v. Reinhart, 2003 WL 21756393 (D. Del. Jul.29, 2003) (same where officer sprayed inmate in the face with mace).

Here, the record evidence, including the medical evidence, fails to describe a use of force that is "repugnant to the conscience of mankind." Rather, the evidence shows that Plaintiff admits that he failed to obey a direct order to submit to fingerprinting. As a result, he was restrained but refused to unclench his hands. Consequently, Defendants used the stun gun to

subdue Plaintiff to get his fingerprints. As to the first factor, the need for application of force is obvious: Plaintiff was refusing to obey an order and was threatening institutional security. As to the second factor, the relationship between that need and the amount of force used, Defendants merely sought to restrain Plaintiff to get his fingerprints. As to the third factor, the threat reasonably perceived by the responsible officials, institutional security is foremost. As to the fourth factor, efforts made to temper the severity of a forceful response, Defendants state that Plaintiff was only stunned once. Plaintiff disputes this and claims that he was stunned four times and was sprayed in the face with mace. As to the fifth factor, serious injury, Plaintiff fails to show that his injuries were anything but minimal and were the result of his own conduct.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). The record facts, in addition with the absence of any significant injury, support a conclusion that the force used with respect to the instant action was *de minimis*. Therefore, the ACJ Defendants' Motion for Summary Judgment should be granted with respect to Plaintiff's excessive force claim. *Accord* Patterson v. Abney, Civil No. 6:07–3565, 2009 WL 150943 (D.S.C. Jan. 21, 2009) (holding that use of stun gun was necessitated by plaintiff's actions in refusing to obey orders and the officers' actions were a good faith effort to restore discipline); Bailey v. County of Kittson, Civil No. 07-1939, 2009 WL 294229 (D. Minn. Feb. 5, 2009) (granting summary judgment and concluding that excessive force claim failed as a matter of law because the suspect failed to demonstrate any actual injury-not even a *de minimis* injury-that resulted from use of taser gun); Henderson v. Gordineer, Civil No. 3:06-1425, 2007 WL 840273 (D.S.C. March 14, 2007) (holding that the use of the taser was a good-faith and reasonable use of force to gain control of a disobedient prisoner in light of the alternatives available and because

17

the prisoner's injuries, if any, were *de minimis*); Honorable v. Osborne, Civil No. 404-113M, 2005 WL 1631015 (W.D. Ky. July 7, 2005) (granting summary judgment for officer where repeated tasering of detainee was justified due his refusal to comply with orders).

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants Allegheny County Jail, Chronister, Coulter, Kengerski, Moore, Nort, Pindel, Rubel and Ramon Rustin (ECF No. 66) be granted and that the Motion for Summary Judgment filed by Defendant Allegheny County Health Services, Inc. (ECF No. 70) be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(C), and the Local Rules for Magistrates, Plaintiff may filed written objections to this Report within fourteen days. Failure to file objections will waive the right to appeal.

Cynthia Reed Eddy
United States Magistrate Judge

Date: February 27, 2013

Jevon Everett, HW1387
SCI-Graterford
PO Box 244
Graterford, PA 19426